UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY P. POWELL,

    Plaintiff,

 v.                                                             Case No. 22-CV-238

SANDRA SITZMAN, DENISE BONNET,
TERRY JAEGER, BRUCE RUSSEL,
RICHARD G. HEIDORN, KELLY DARMODY,
PAULA STELSEL, MICHAEL REVERS,
and BRAD HOMPE,

    Defendants.

## ORDER SCREENING THE COMPLAINT

On February 25, 2022, plaintiff Timothy P. Powell, who is incarcerated at Winnebago Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. (ECF No. 1.) Powell also filed a motion for leave to proceed without prepayment of the filing fee. (ECF No. 2.) Powell further filed a motion for an order for all copies of his medical files (ECF No 4.) and a motion to appoint counsel (ECF No. 5). In addition to screening the complaint, this order will also resolve these motions.

The court has jurisdiction to resolve Powell's motions and to screen the second amended complaint in light of Powell's consent to the full jurisdiction of a

magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

## MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act (PLRA) applies to this case because Powell was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On February 25, 2022, Powell filed a motion for leave to proceed without prepayment of the filing fee. (ECF No. 2.) On March 8, 2022, the court ordered Powell to pay an initial partial filing fee of $11.95 by April 6, 2022. (ECF No. 11.) Powell paid that fee on March 18, 2022. The court will grant Powell's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## SCREENING THE COMPLAINT

*Federal Screening Standard*

The Prison Litigation Reform Act (PLRA) applies to this case because Powell was incarcerated when he filed his complaint. The PLRA requires courts to screen complaints brought by prisoners seeking relief from a governmental entity or officer

2

or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent

standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*Powell's Allegations*

Powell has a deformed left foot, and prior to his incarceration in 2015, he received injections that caused nerve damage to his left leg. (ECF No. 1 at 2.) Powell's foot is "turned on its outer side", his "toes have curled up", and he is unable to move his toes. As a result, walking is difficult, and he is often in pain. (*Id.*)

In 2015, he was incarcerated at Waupun Correctional Institution, and immediately began seeking medical treatment for the pain in his foot. (*Id.* at 3.) At some point, he was fitted for an ankle foot orthotic (AFO) by a specialist at Nova Care ACTRA Rehab, which alleviated his pain for a short period of time. (*Id.*) Between 2015 and 2019, when he transferred to Oshkosh Correctional Institution, Powell saw several specialists (all unnamed) who tried several different treatments to address his issues with his foot. (*Id.*)

Upon arriving at Oshkosh, Powell requested surgery several times, though he does not state to whom he made the requests. (*Id.*) Instead, unidentified staff at Oshkosh had him fitted for another AFO, which caused blood blisters. (*Id*).

In January 2020, Powell transferred to Winnebago Correctional Institution, and upon his arrival immediately began requesting medical attention. (*Id.* at 3-4.) During his time there, Powell saw defendant Bruce Russell at Nova Care, and Russell decided to build Powell a "Crows' Boot" to address the problem. (*Id.* at 4.) However, the "Crow's Boot" did not alleviate his pain, and Russel did not change his

4

course of action. (*Id.* at 4, 8.) Powell also saw five additional specialists between February and June 2021 (all non-defendants), and as a result, the specialists decided that bone fusion surgery would be the best course of action. (*Id.* at 4.)

Powell asserts that from 2015-2017 when Powell was at Waupun and from 2020-present when Powell was at Winnebago defendant Sandra Sitzman denied his requests for surgery several times, instead directing Powell to wear the "Crow's Boot" that Russell created for him. (*Id.* at 6.) Defendant Denise Bonnett, a nurse practitioner, treated Powell from 2015-2017 at Waupun and from 2020-present at Winnebago. Bonnett also denied Powell's requests for surgery as recommended by the specialists, instead telling him that he was fine and not experiencing any pain. (*Id.*) Defendant Dr. Richard G. Heidorn was Powell's doctor both at Waupun and Winnebago, and he refused to consider other treatments after he realized the AFO and the "Crows' Boot" were not addressing Powell's condition. (*Id.* at 7).

Defendant Dr. Kelly Darmody also treated Powell at Winnebago, and had Powell remain in the "Crows' Boot" even though she knew it was not addressing Powell's condition. (*Id.* at 8.) She also did not prescribe him pain medication. (*Id.* at 8.)

Powell also alleges that the Wisconsin Department of Corrections Medical Director, Michael Rivera, reviewed all of his requests for surgery and denied them. (*Id.* at 9.) He also knew that Powell was required to live in a residence hall with four stories but no elevator, even though his condition made stairs a struggle. (*Id.*)

5

Powell further alleges that defendants Terry Jaeger, Paula Stelsel, and Brad Hompe reviewed his inmate complaints but did not properly investigate Powell's situation. (*Id.* at 7, 9). He states they did not interview him or personally witness how he was struggling with the "Crows' Boot". (*Id.*)

Powell seeks $500,000.00 in damages. (*Id.* at 10.) He also wants the court to order the defendants to authorize the surgery as recommended by his specialists. (*Id.*)

*Analysis*

Powell claims that the defendants violated his Eighth Amendment rights when they failed to properly treat his foot over several years. A prison official violates the Eighth Amendment where he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Powell sufficiently alleges that his condition is objectively serious.

Regarding the second prong, a plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722,

6

728 (7th Cir. 2016) (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." *Id.* The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment*." Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). These choices include where a prison official fails to act or do anything to address the serious medical need. *See Gayton*, 593 F.3d at 623-624 (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). They also include where an official delays necessary treatment, aggravating a condition or needlessly prolonging a plaintiff's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012).

Powell may not proceed on claims that took place prior to his incarceration at Winnebago. He alleges that while at Waupun, he saw several specialists and underwent several different types of treatment. So, while some defendants treated him both at Waupun and Winnebago, their actions at Waupun do not rise to the level of deliberate indifference because he alleges he was receiving several different types of medical care from several different specialists at that time.

As for the allegations concerning Oshkosh, Powell does not allege who violated his constitutional rights. Because §1983 makes public employees liable "for their own misdeeds but not for anyone else's," *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009), a plaintiff must specifically allege what each individual defendant did (or did not do) to violate his constitutional rights.

7

Powell may, however, proceed on an Eighth Amendment claim against Sitzman, Bonnett, Russell, Heidorn, Darmody, and Revers. Medical providers who persist in a course of treatment they know to be ineffective can be held liable for deliberate indifference to medical needs. *Greeno*, 414 F.3d at 655. Sitzman, Bonnett, Russell, Heidorn, and Darmody, all continued to require Powell to wear the "Crows' Boot" and did not pursue other options even though they knew it was an ineffective treatment for his condition. Revers repeatedly refused to approve Powell's requests for surgery, and also knew that he was being housed in a housing unit with no elevator.

Powell may not proceed on claims against Jaeger, Stelsel, and Hompe. At most, he alleges that they reviewed and denied his inmate grievances. Prison officials who deny grievances "but who otherwise did not cause or participate in the underlying conduct" cannot be held liable under § 1983. *See Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). Jaeger, Stelsel, and Hompe are dismissed.

## MOTION FOR MEDICAL FILE (ECF NO. 4)

Powell filed a motion requesting the court to order the defendants to give him copies of all of his medical files. (ECF No. 4.) If Powell would like these records, he will need to request them from the defendants during the discovery process, which is the period of time during which the parties can exchange information regarding the case. Once the defendants answer the complaint, the court will issue a scheduling order that, in part, sets a deadline for conducting discovery. The

8

scheduling order will also include the rules governing the discovery process. Additionally, the court will include with this order a guide entitled "Answers to Prisoner Litigants' Common Questions," which contains a lot of information on how to conduct discovery. Because Powell needs to use the discovery process to get these records, his motion is denied.

**MOTION TO APPOINT COUNSEL (ECF NO. 5)**

Powell requests the court appoint him counsel. In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. *Pickett v. Chicago Transit Authority,* 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to

9

the second inquiry." *Eagan*, 987 F.3d at 682. Powell submitted letters demonstrating he made a good faith effort to hire counsel on his own. (ECF No. 5-1.) He satisfies the first prong.

The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." *Eagan*, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett* 930 F.3d at 871.

Powell states he needs an attorney because the case spans several years and because as an incarcerated individual, he is not allowed to have certain materials in his possession. First, as explained above, the court narrowed Powell's claims to

10

those that only concern his treatment while incarcerated at Winnebago. Second, institutions have litigation coordinators that will work with Powell to ensure he gets access to whatever materials he requires to prove his case, even if he is not allowed to physically possess some of those materials.

Powell's complaint also demonstrates that he is capable of telling the court his story, which for the next few stages of the litigation, is the most important part. Currently, the defendants need to make an appearance and file an answer to Powell's complaint. Once the defendants file an answer, the court will issue a scheduling order setting the discovery and dispositive motion deadlines. Discovery consists of written interrogatories (questions) and requests for documents. A person does not need to be well-versed in the law to ask or truthfully answer questions. Given his communications thus far with the court, Powell appears capable of responding to defendants' questions about his foot and his medical care and submitting questions of his own to the defendants.

Concerning dispositive motions, in cases such as this, a dispositive motion is typically a motion for summary judgment. In such a motion, a party will move the court to dismiss the case because it believes there are no genuine disputes of material fact and that the party is entitled to judgment as a matter of law. Should the defendant file a motion for summary judgment in this case, Powell does not need to be well-versed in Eighth Amendment law to respond to the motion, nor does he need to contact experts to respond to a summary judgment motion. Summary judgment rises or falls on whether or not there is a genuine dispute of material fact.

11

Powell clearly knows the facts concerning his case, as his complaint demonstrates. The court is familiar with the law and does not require Powell to explain the legal basis of his claim. Instead, the court needs Powell to tell it which facts asserted by the defendants are in dispute and the basis for Powell's contention that those facts are in dispute.

Accordingly, the court will deny his motion. If circumstances change or Powell encounters obstacles that he does not believe he can handle on his own, he may renew his motion, and the court will consider it at that time.

**THEREFORE, IT IS ORDERED** that Powell's first motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that Powell's motion for an order for all copies of his medical files (ECF No.4) is **DENIED.**

**IT IS FURTHER ORDERED** that Powell's motion to appoint counsel (ECF No. 5) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants Terry Jaeger, Paula Stelsel, and Brad Hompe are **DISMISSED**.

**IT IS FURTHER ORDERED** that Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Sandra Sitzman, Denise Bonnett, Bruce Russell, Richard G. Heidorn, Kelly Darmody, and Michael Revers. It is

**ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the agency having custody of Powell shall collect from his institution trust account the $338.05 balance of the filing fee by collecting monthly payments from Powell's prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Powell is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Powell is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk of Courts
> 517 E. Wisconsin Avenue, Room 362
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Powell is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Powell is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. Powell failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Powell may find useful in prosecuting his case.

Dated at Milwaukee, Wisconsin this 29th day of April, 2022.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge

14